Citation Nr: 1703147 
Decision Date: 02/02/17 Archive Date: 02/15/17

DOCKET NO. 09-23 448 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUE

Entitlement to a disability rating in excess of 10 percent for a low back strain prior to May 20, 2016, and in excess of 20 percent thereafter.


REPRESENTATION

Veteran represented by: California Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Jessica O'Connell, Associate Counsel

INTRODUCTION

The Veteran served on active duty from May 2003 to May 2008.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a June 2008 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Salt Lake City, Utah. Jurisdiction is now with the VA RO in Oakland, California.

The record before the Board consists of the Veteran's electronic records located within the Veterans Benefits Management System (VBMS) and Virtual VA.

In January 2016, the Veteran testified at a hearing before the undersigned Veterans Law Judge. A transcript of the hearing is of record.

When the case was before the Board in March 2016, it was remanded for further development and adjudicative action. The Board finds that there has been substantial compliance with its remand directives. First, the RO contacted the Veteran in April 2016 to request that he provide VA with contact information and medical authorizations for his treating medical providers. The Veteran did not respond to that letter and it was not returned as undeliverable. The RO then obtained the Veteran's outstanding VA treatment records and ensured he was provided with an adequate VA examination. Thereafter, the Veteran's claim was readjudicated in an August 2016 supplemental statement of the case. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 


FINDING OF FACTS

1. Prior to May 20, 2016, the Veteran's low back strain was manifested by pain, flare-ups, full forward flexion to 90 degrees, and combined range of motion, at the very least, of 185 degrees; there is no evidence of muscle spasm or guarding severe enough to result in an abnormal gait or spinal contour, ankylosis, or incapacitating episodes requiring bed rest prescribed by a physician.

2. Beginning May 20, 2016, the Veteran's low back strain was manifested by pain, flare-ups, and forward flexion limited to, at worst, 50 degrees; there is no evidence of ankylosis or incapacitating episodes requiring bed rest prescribed by a physician.


CONCLUSIONS OF LAW

1. Prior to May 20, 2016, the criteria for a disability rating in excess of 10 percent for a low back strain have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5235-5243 (2016).

2. Beginning May 20, 2016, the criteria for a disability rating in excess of 20 percent for a low back strain have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5235-5243 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist

With respect to the Veteran's claim, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2016).

VA's duty to notify was satisfied by letters dated March and October 2008. See 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

With respect to the duty to assist, the Veteran's service treatment records and VA outpatient treatment records have been obtained. Moreover, the Veteran has been afforded adequate VA examinations. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). Specifically, the April 2008, August 2009, and May 2016 examiners performed physical examinations of the Veteran, took into account the Veteran's statements and treatment records, and provided adequate information required for rating purposes. 

The Veteran has not identified any additional, existing evidence that could be obtained to substantiate his claim. The Board is also unaware of any such evidence. Accordingly, the Board finds that VA has satisfied its duty to assist the Veteran.

Legal Criteria

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4 (2016). The Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2016). Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2016).

All service-connected spine disabilities are rated pursuant to The General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula), unless the spinal disability is rated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes (Incapacitating Episodes Rating Formula). 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243.

Under the General Rating Formula, a thoracolumbar spine disability is assigned a 10 percent disability rating is assigned for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, the combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of height. 38 C.F.R. § 4.71a, General Rating Formula.

A 20 percent disability rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Id.

A 40 percent disability rating is warranted for forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. Id.

A 50 percent evaluation is warranted if there is unfavorable ankylosis of the entire thoracolumbar spine, and a 100 percent evaluation is assigned if there is unfavorable ankylosis of the entire spine. Id.

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. 38 C.F.R. § 4.71a, General Rating Formula at Note (2). The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation, and the normal combined range of motion of the thoracolumbar spine is 240 degrees. Id.

Objective evidence of neurologic abnormalities of the spine are rated separately under an appropriate diagnostic code. 38 C.F.R. § 4.71a, General Rating Formula at Note (1).

Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 20 percent rating is warranted for incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past twelve months. 38 C.F.R. § 4.71a, Diagnostic Code 5243. A 40 percent rating is warranted for incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past twelve months, and a 60 percent rating is warranted for incapacitating episodes having a total duration of at least six weeks during the past twelve months. Id. For purposes of evaluation under Diagnostic Code 5243, an "incapacitating episode" is a period of acute signs and symptoms due to intervertebral disc syndrome that require bed rest as prescribed by a physician and treatment by a physician. Id. at Note (1).

In determining the degree of limitation of motion, the provisions of 38 C.F.R. § 4.40 concerning lack of normal endurance, functional loss due to pain, and pain on use and during flare-ups; the provisions of 38 C.F.R. § 4.45 concerning weakened movement, excess fatigability, and incoordination; and the provisions of 38 C.F.R. § 4.10 concerning the effects of the disability on the veteran's ordinary activity are for consideration. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32 (2011).

The provisions of 38 C.F.R. § 4.40 state that the disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. According to this regulation, it is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to these elements. In addition, the regulations state that functional loss may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the veteran undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled.

The provisions of 38 C.F.R. § 4.45 state that when evaluating the joints, inquiry will be directed as to whether there is less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement.

The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59.

Factual Background and Analysis

The Board has thoroughly reviewed all of the evidence of record, with an emphasis on the medical evidence pertinent to the claim on appeal. Although all the evidence of record has been thoroughly reviewed, the Board is not required to discuss each piece of evidence in detail. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board's analysis herein will focus on what the evidence shows, or fails to show, with respect to the Veteran's claim.

In a June 2008 rating decision, service connection for a low back strain was granted and a 10 percent disability rating was assigned. The Veteran appealed the disability rating assigned and in an August 2016 rating decision, the RO continued the 10 percent rating prior to May 20, 2016, and increased the Veteran's disability rating to 20 percent thereafter. The Veteran contends that his service-connected low back strain is more severe than the currently assigned disability ratings reflect.

At an April 2008 VA examination, the Veteran reported chronic mid-low back pain since January 2007. He indicated the pain was constant and felt as though there was a sticking and stabbing sensation with an intensity level of a 2 or 3/10; he denied radiating pain. He acknowledged nightly flare-ups at a level of 6/10 lasting approximately four hours that are precipitated by lying on his back and alleviated by changing position. He indicated flare-ups caused a decrease in his range of motion but not in his ability to work. He denied receiving current treatment for his back or using assisting devices. The examiner's overall functional assessment was that the Veteran's low back strain did not affect his work but did significantly affect his recreational activities. The Veteran reported he was easily able to perform his usual daily activities and he denied incapacitation. On examination, the Veteran's spine, limbs, posture and gait, position of the head, and curvatures of the spine were all within normal limits. Range of motion testing revealed forward flexion to 90 degrees; extension to 10 degrees without pain; right and left rotation each to 30 degrees; right lateral flexion to 10 degrees; and left lateral flexion to 15 degrees. His combined range of motion was 185. Repetitive motion testing produced increased pain but range of motion did not change due to pain, fatigue, weakness, lack of endurance, or incoordination. An x-ray of the spine was normal.

In September and October 2008 statements from the Veteran, he indicated that he felt a 10 percent disability rating was not sufficient. He acknowledged that while he had full range of motion in his back, he experienced pain. He stated his back pain has caused sleep disturbance and that he was not able to sit in a chair for more than half an hour.

At a December 2008 VA appointment, the Veteran complained of low back pain at night while supine and stated it was much better during the day after he loosened up. He indicated he ran and lifted weights for exercise (bench press and tricep curls) and that neither exercise hurt his back.

In his May 2009 VA Form 9 and in a May 2009 statement, the Veteran indicated that he "over pushed" himself at the April 2008 VA examination, which he believes "gave the VA false information of [his] true and regular range of motion" for his back. Most days, he did not have the range of motion he forced his body to do at the examination. Following that examination, the Veteran indicated he was in pain and left with residuals for days following. He reported that he was unable to sleep for more than an hour at a time without waking up with pain and discomfort. The Veteran stated that pain, lack of endurance, and weakness were not acknowledged in his disability award and that he felt under rated.

At an August 2009 VA examination, the Veteran reported pain in his lower back aggravated by prolonged sitting, bending, and lifting. He had to shift his sitting position frequently but was able to walk as desired, go up and down stairs, drive, and was independent of self-care. The Veteran denied incapacitating flare-ups or using any assistive devices. He also denied radiating pain in his lower extremities and reported being in control of his bowels and bladder. On examination, the Veteran's gait and lumbar lordosis were normal; on palpation of the lower back there was some midline tenderness in the lower lumbar area. There were no sensory or motor deficits noted in the lower extremities. While the Veteran expressed pain with motion of the lumbosacral spine, range of motion was normal. On range of motion testing, the Veteran was able to forward flex to 90 degrees at the level of the hips; during this process his lumbar segment became kyphotic and he was able to bring his fingertips to the lower part of his legs. Extension was to 30 degrees; right and left lateral bending were to 30 degrees; and trunk rotations were 60 degrees each. On repetitive forward bending, the Veteran expressed pain with all motion but there was no significant increase in pain, fatigability, lack of endurance, or loss of range of motion. X-rays revealed maintained disc spaces and vertebral body heights with no significant degenerative changes were seen.

At a January 2010 VA appointment, the Veteran's lumbar paraspinal musculature was tender to palpation. Although range of motion testing was performed, the degrees of motion were not reported; however, the examiner noted the Veteran had slight discomfort with the end point on range of motion testing. A straight leg test was negative. June 2011 magnetic resonance imaging and September 2011 x-rays of the lumbar spine were normal.

At a May 2014 VA appointment, the Veteran indicated he only experienced low back pain when laying down. At an October 2014 appointment, the Veteran reported thoracic back pain and stated he only experienced pain below his shoulder blades when lying down; he denied pain when walking around or carrying a backpack for work. He stated it was difficult to find a comfortable position to sleep in. An October 2014 x-ray of the spine revealed normal alignment; there was no interval change or compression fractures.

At the Veteran's January 2016 hearing before the Board, he characterized his back pain as a 9/10 and testified that he experienced moderate to severe limitation of motion, shooting pain, and sleep problems due to pain.

At a May 20, 2016, VA examination, the Veteran reported morning back stiffness, pain, and flare-ups with lifting and bending. Pain improved when lying down. He indicated he had gone to physical therapy and chiropractic treatment, which helped, but did not completely resolve his symptoms. The Veteran reported he had functional loss and impairment due to pain, which limited his lifting and repetitive motions. Range of motion testing revealed forward flexion to 50 degrees; extension to 5 degrees without pain; right and left rotation each to 25 degrees; right and left lateral flexion each to 25 degrees. The Veteran was able to perform repetitive use testing with at least three repetitions and there was no change in range of motion following repetitive testing. On repetitive use testing, there was evidence of pain with forward flexing to 50 degrees, extension to 5 degrees, and bilateral lateral flexion and rotation all to 20 degrees. Although the examination was not performed during a flare-up, the examiner found the Veteran would experience pain with range of motion similar to pain experienced on repetitive use testing. The examiner determined that pain, weakness, fatigability, or incoordination significantly limited the Veteran's functional ability with repeated use over time and with flare-ups and that pain caused functional loss. There was evidence of pain with weight-bearing. There was no objective evidence of guarding or muscle spasms or of localized tenderness or pain on palpation of the joint or associated soft tissue of the thoracolumbar spine. Muscle strength testing and reflex and sensory examinations were all normal and straight leg testing was negative bilaterally. The Veteran denied radicular pain or other signs or symptoms of radiculopathy, there were no neurological abnormalities or findings related to his back disability, and the Veteran did not have intervertebral disc syndrome.

Following a thorough review of the evidence, the Board finds that disability ratings in excess of 10 percent prior to May 20, 2016, and in excess of 20 percent thereafter for the Veteran's low back strain are not warranted.

Prior to May 20, 2016, the evidence of record does not reflect that the Veteran's forward flexion was limited to 60 degrees or less or that his combined range of motion was 120 degrees or less. There is no evidence of muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour. Additionally, the record does not reflect that the Veteran has ever had favorable or unfavorable ankylosis or that he experienced incapacitating episodes for a minimum of two weeks with bed rest by a physician. Therefore, a disability rating in excess of 10 percent prior to May 20, 2016, is not warranted. See 38 C.F.R. § 4.71a, General Rating Formula. Additionally, there is no evidence that the Veteran's low back strain has been manifested by incapacitating episodes with bed rest by a physician. See 38 C.F.R. § 4.71a, Incapacitating Episodes Rating formula.

Beginning May 20, 2016, the evidence of record does not demonstrate that the Veteran's forward flexion was ever limited to 30 degrees or less or that he has ever had favorable or unfavorable ankylosis. See 38 C.F.R. § 4.71a, General Rating Formula. Moreover, there is no evidence that the Veteran's low back strain has been manifested by incapacitating episodes with bed rest by a physician. See 38 C.F.R. § 4.71a, Incapacitating Episodes Rating formula.

The Board also notes that there is no evidence that the Veteran has any neurological impairments due to his service-connected low back strain. §38 C.F.R. § 4.71a, 
General Rating Formula, Note (1).

In reaching its decision, the Board has considered whether manifestations of the Veteran's low back strain have resulted in a level of functional loss greater than that already contemplated by the 10 percent disability rating prior to May 20, 2016, and the 20 percent disability rating thereafter. See 38 C.F.R. §§ 4.40, 4.45, 4.59 (2015); see also Deluca v. Brown, 8 Vet. App. 202-206 (1995) (holding that evaluation of musculoskeletal disabilities rated on the basis of limitation of motion requires consideration of functional loss due to pain). Although the Veteran has reported painful motion, and examiners have witnessed painful motion on examination, there is no objective medical evidence that range of motion has been further limited due to pain, fatigue, weakness, lack of endurance, or incoordination such that ratings in excess of those assigned would be warranted. See id.; see also Mitchell v. Shinseki, 25 Vet. App. 32, 33 (2011) (holding that pain alone does not constitute a functional loss under VA regulations that evaluate disability based on limitation of range of motion). The Board cannot speculate as to any additional functional impairment and there must be a basis in fact for an assigned rating. 38 C.F.R. § 3.102 (2016). Based on the foregoing, the Board finds that higher disability ratings are not warranted based on additional functional impairment. See Thompson v. McDonald, 815 F.3d 781, 786 (Fed. Cir. 2016) (holding that the provision describing functional loss due to disability of the musculoskeletal system does not supersede requirements for a higher rating specified in the Rating Schedule). 

The Board is aware of the recent decision in Correia v. McDonald, 28 Vet. App. 158 (2016) from the Court of Appeals for Veterans Claims (Court). In reaching the above decisions, the Board has considered the applicability of the principles set forth in this case and finds no basis for remanding for a new examination.

The Correia case involved a claim for an increased rating for knee disorders, as opposed to the current case which involves a spine disorder. In Correia, the Court provided a precedential interpretation of the final sentence of 38 C.F.R. § 4.59, which reads: "The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint." Specifically, the Court held "that the final sentence of § 4.59 creates a requirement that certain range of motion testing be conducted whenever possible in cases of joint disabilities." The Court also stated that "to be adequate, a VA examination of the joints must, wherever possible, include the results of the range of motion testing described in the final sentence of § 4.59."

The Court provided two qualifications to this requirement. First, the Court "trust[ed] that its decision today will be taken as requiring the range of motion testing listed in the final sentence of § 4.59 in every case in which those tests can be conducted." The Court specifically found that it was not competent to determine "whether upper extremities are or can be weight-bearing," though it did find that knees were "undoubtedly weight-bearing." In a later footnote, the Court "le[ft] it to medical professionals to determine whether the listed range of motion testing can be performed on the joints at issue in a particular case." Second, the Court indicated that range of motion testing of the opposite joint does not apply "for joints that do not have an opposite or whose opposite is also damaged." While the Court did not define "damaged" for these purposes, they noted that both of the appellant's knees were "damaged." The record shows that the appellant in Correia had knee diagnoses that included both traumatic arthritis and degenerative joint disease.

The Court in Correia held, in essence, that to be adequate, an examination of a joint must include range of motion testing of the joint in the following areas: active motion, passive motion, weight-bearing, and nonweight-bearing. The Board initially notes, however, that the Correia case is less applicable in the case of a spine than in the knee. First, the Board notes that there can clearly not be an opposite undamaged joint in the case of a spine disorder as there can be in a knee disorder. Second, the Board notes that the examination reports noted the range of motion of the spine in all directions, and where applicable, the specific point at which painful motion begins. Although the examination reports in this case did not specify whether the examination was performed with active motion or passive motion, or with weight-bearing or nonweight-bearing, the Board finds that this is inconsequential under the facts of this case. The Board takes notice that on VA examinations, the testing of the range of spine motions is generally done by assessing active motion rather than passive. The "active" motion is tested by having the Veteran stand and attempt to lean forward to test flexion, lean backward to test extension, lean sideways to test lateral flexion, and twist the upper torso at the waist to test lateral rotation. This standing testing is considered to be testing on weight-bearing as the Veteran must support the weight of his body while undergoing such testing.

Although it may possible to test passive motion without weight-bearing by having the Veteran lie down on a table and have the examiner move the spine by bending the Veteran's body, such testing would be awkward and would not reveal useful information. In this regard, active range of motion testing produces range of motion test result figures which are more restricted than the results produced by passive range of motion testing in which the physician forces the joint through its motions. Similarly, testing on weight-bearing would generally produce more restrictive results than testing done without weight-bearing. Therefore, there is no prejudice to the Veteran in relying on the VA examinations that involved active range of motion testing on weight-bearing because such results tend to produce the "worst case scenario" of impairment and thus would tend to support the highest possible rating.

The Board has also considered whether the Veteran's low back strain presents such an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of extraschedular ratings is warranted. See 38 C.F.R. § 3.321(b)(1) (2016); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor for extraschedular consideration is a finding that the established schedular criteria are inadequate to describe the severity and symptoms of the claimant's disability. See Thun v. Peake, 22 Vet. App. 111, 118 (2008).

Here, the rating criteria reasonably describe the Veteran's disability level and symptomatology, and provide for higher or separate ratings for more severe symptoms. Moreover, as discussed above, the schedular criteria for musculoskeletal disabilities contemplate a wide variety of manifestations of functional loss. See 38 C.F.R. §§ 4.40, 4.45, 4.59; Mitchell, 25 Vet. App. at 37 (2011). The Board acknowledges that the Veteran contends that his low back strain causes sleep disturbance, a symptom not contemplated by the schedular rating criteria pertaining to the spine. However, there is no evidence that the Veteran's disability picture presents other indicia of an exceptional or unusual disability picture, such as marked inference with employment or frequent periods of hospitalization. 38 C.F.R. § 3.321(b)(1). Accordingly, referral for extraschedular consideration is not warranted.

In addition, a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014). In this case, however, neither the Veteran nor the record has raised this contention. Yancy v. McDonald, 27 Vet. App. 484, 495 (2016).

The Board has contemplated whether assigning further staged ratings would be appropriate, but for the reasons discussed above has determined that the criteria for a rating in excess of 10 percent prior to May 20, 2016, and in excess of 20 percent thereafter have not been met for any portion of the period of the claim. See Fenderson v. West, 12 Vet. App. 119, 126 (1999); see also Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007).

The Board has considered the Veteran's lay statements with regard to his claim and finds that his statements regarding the symptoms he experiences are competent evidence because this requires only personal knowledge. See 38 C.F.R. § 3.159(a); Layno v. Brown, 6 Vet. App. 465, 470 (1994). However, the Veteran's statements are not competent evidence to identify a specific level of disability to the appropriate diagnostic codes as this requires specialized education, training or experience. See 38 C.F.R. § 3.159(a).

Finally, the Board has acknowledged that the Veteran contends his sleep disturbance due to his low back strain has interfered with his ability to work. However, he has not alleged, and the evidence does not suggest that he is unemployable due to his service-connected low back strain. Therefore, the issue of entitlement to a total disability rating based on individual unemployability has not been raised by the record. See Rice v. Shinseki, 22 Vet. App. 447 (2009).

In reaching the above conclusions, the Board considered the doctrine of reasonable doubt; however, as the preponderance of the evidence is against the Veteran's claim, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990).


ORDER

Prior to May 20, 2016, a disability rating in excess of 10 percent for a low back strain is denied.

Beginning May 20, 2016, a disability rating in excess of 20 percent for a low back strain is denied.




____________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs